UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRIAN K. RUBY,

    Plaintiff,

    v.

MARK SEVIER, *et al.*,

    Defendants.

CAUSE NO.: 3:18-CV-890-JD-MGG

OPINION AND ORDER

Brian K. Ruby, a prisoner without a lawyer, filed a complaint against twelve defendants alleging he was wrongfully terminated from the PLUS[1] program at the Westville Correctional Facility. ECF 2. The court screened the complaint and determined that it didn't state a claim because Ruby does not have a constitutional right to continued participation in the PLUS program and cannot challenge the process he was given. ECF 8 at 3. However, pursuant to *Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013), Ruby was granted an opportunity to file an amended complaint. *Id*. He has now done so. ECF 16.[2] Ruby has sued eight defendants and purports to bring his claims

---

[1] "PLUS is a faith and character-based re-entry initiative. Purposeful Living Units Serve offers participants alternatives for rehabilitation. Whether participants choose to learn from character-based materials or faith-based materials, the living units are geared towards teaching core fundamental values that challenge and focus on positive reinforcement through learned behavior. The emphasis of this voluntary initiative focuses on strengthening spiritual, moral, and character development as well as life-skills. This is the basis towards re-entry into the community." *See* https://www.in.gov/idoc/2356.htm (last visited Feb. 10, 2020).

[2] Ruby filed this document as a motion to amend. However, because the court previously granted him leave to amend his complaint, it was unnecessary to do so. Therefore, the motion will be denied as moot, and the filing will be treated as the amended complaint itself.

pursuant to 42 U.S.C. §§ 1981, 1983, & 1985. *Id*. He alleges that his termination from the PLUS program was retaliatory, unconstitutional, and occurred without due process.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

While incarcerated at Westville, Ruby was accepted into and participated in the PLUS program; completing it would have made him eligible to earn a six-month time credit. For his part, Ruby was tasked with observing offenders on suicide watch. He was to ensure that those offenders did not attempt to commit suicide. In June of 2018, Ruby formally complained to the PLUS Supervisor, Ms. Thomas, about "safety and security issues for the 'suicidal' inmates," advising her of the "normal procedures followed at other IDOC facilities." ECF 16 at 3. He further attempted to address those concerns with Warden Mark Sevier and Deputy Warden Pazera, but no response was received and no changes were made. In fact, Ms. Thomas and Unit Team Manager Hood told Ruby to "tone it down and quit rocking the boat, or else they would find someone else to fill his spot." *Id*. They told him he "should not make complaints." *Id*. at 4.

On July 7, 2018, another offender, Corey Lewis, attempted to commit suicide on Ruby's watch. Prison officials blamed Ruby for not providing proper oversight, but Ruby claims that it was the prison's own "lack of due diligence and ability to properly care for the prisoners entrusted in their care" that led to the incident. *Id*. In any event, Ruby was subsequently removed from the PLUS program, and his classification status was changed which restricted him from participating in additional programs. Ruby alleges that his removal was in retaliation for his previous complaints which would have exposed the prison's "negligence and deliberate indifference to the [suicidal] prisoners' needs." *Id*.

"To prevail on his First Amendment retaliation claim, [the plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal quotation marks and citations omitted). "Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners." *Caffey v. Maue*, 679 Fed. Appx. 487, 490 (7th Cir. 2017) (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987); *Watkins v. Kasper*, 599 F.3d 791, 796–97 (7th Cir. 2010)). Not all actions alleged to be retaliatory must be "actionable in and of themselves . . . ." *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). Rather, "if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983." *Id*.

Ruby alleges that Warden Sevier "along with the other defendants" (ECF 16 at 4) decided to remove him from the PLUS program in retaliation for raising concerns about the program's procedures and the safety and security of the inmates he was charged with observing. Further, he claims that Ms. Thomas and Mr. Hood threatened that they would find someone else to fill his spot if he continued complaining. Read together and giving Ruby the benefit of the inferences to which he is entitled at this stage, he has plausibly alleged retaliation claims for monetary damages against Warden Sevier, Ms. Thomas, and Mr. Hood.[3]

As to the remaining defendants, Ruby has named Rob Carter, the Commissioner of IDOC, Classification Supv. Mr. Krueger, Grievance Specialist Harvil,[4] and Sgt. Ms. Johnson. However, other than describing their job titles, they are not mentioned anywhere in the body of the complaint. Similarly, the only allegation against Deputy Warden Pazera is that Ruby "attempt[ed]" to address his concerns regarding the PLUS program with him, but no response was received. ECF 16 at 3. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for

---

[3] Ruby also requests declaratory and injunctive relief. He wants the court to order the defendants to "fix the lack of prisoners rights and protection; fix the lights in cells and improve the conditions for mentally ill prisoners." ECF 16 at 6. These requests appear to relate to the conditions of confinement of other inmates—namely, the prisoners he was tasked with observing—rather than to any of Ruby's own constitutional rights at issue in this case. Therefore, he lacks standing to obtain the requested injunctive relief. *See e.g. Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (prisoner lacked standing to bring claims related to the rights of and injuries suffered by other prisoners).

[4] Ruby alleges generally that he has "exhausted his administrative remedies, even thru the efforts of the defendants to impede the process in each way." ECF 16 at 4. However, "the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

4

anyone else's." *Id*. at 596. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Therefore, the amended complaint does not state retaliation claims against these defendants.

Next, Ruby alleges his due process rights under the Fourteenth Amendment were violated when his participation in the PLUS program was terminated without a hearing. As noted in this court's previous order, "[t]here is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment." *Zimmerman v. Tribble,* 226 F.3d 568, 571 (7th Cir. 2000) (citation omitted). Consequently, "the denial of access to educational programs does not infringe on a protected liberty interest." *Id.* Moreover, because the successful completion of an educational program is not inevitable, the denial of the opportunity to earn good time credits through educational programs "does not inevitably affect the duration of the sentence, and does not deprive him of constitutional guarantees." *Id.* (internal quotation marks and citation omitted); *see also Sandin v. Connor,* 515 U.S. 472, 487 (due process is required only when state action "will inevitably affect the duration of [a prisoner's] sentence"). Here, Ruby does not allege that he completed the PLUS program or that completion was inevitable absent termination. Therefore, not only does Ruby have no constitutional right to continued participation in the PLUS program, but he cannot challenge the process he was given regarding it either. *See Zimmerman*, 226 F.3d at 571.

Similarly, Ruby claims that his due process rights under the Fourteenth Amendment were violated when his classification status was changed, which restricted

him from participating in other unidentified programs. He alleges that he was placed into the "most restrictive, gang infested area of the prison, in which white males such as himself, are preyed upon by other prisoners." ECF 16 at 4. He does not allege that he was personally subjected to any threats or that he has suffered any specific harm. In any event, the law is clear that Ruby does not have a protected liberty interest in a particular security classification. Due process is only required when punishment extends the duration of confinement or imposes "atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."). Ruby's general averment that he was placed in a gang infested area of the prison describes neither an "atypical" nor "significant" hardship in relation to the ordinary incidents of prison life. *See United States v. Tokash*, 282 F.3d 962, 970 (7th Cir. 2002) ("prisons are inherently dangerous places and are inhabited by violent people"). Thus, he has not stated a due process claim regarding his change in classification.

Ruby, who describes himself as a "white male,"[5] also alleges that the "negligence, willful, wanton and reckless conduct, and discriminatory acts" of the defendants violated his equal protection rights. ECF 16 at 3–4. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious

---

[5] The only reference Ruby makes to his race is with regard to his current housing placement stating, "Plaintiff was also forced into the most restrictive, gang infested area of the prison, in which white males such as himself, are preyed upon by other prisoners." ECF 16 at 4.

discrimination based on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor . . .." *Id.* at 719–20 (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting that discrimination must be intentional, purposeful, or have a discriminatory motive    ). Here, Ruby does not allege that he was treated differently or that any of the actions taken by the defendants were based on or because of his race (or other protected class). Thus, he has not stated a claim under the Equal Protection Clause.

Ruby references 42 U.S.C. §§ 1981 and 1985, stating that he "wishes to bring suit" under those statutes. ECF 16 at 1. Section 1985 "prohibits a conspiracy . . . motivated by racial, or other class-based discriminatory animus." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Of note, Ruby does not mention or describe any sort of conspiracy between the defendants.[6] More importantly, as noted above, the complaint does not plausibly allege racial or other class-based discriminatory animus.[7] Similarly, to bring a claim pursuant to section 1981, a plaintiff must allege that the defendants were

---

[6] For this reason, even if Ruby intended to bring his claim pursuant to 42 U.S.C. § 1983, it is still insufficient. *See Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009) (conspiracy allegations cannot rely on vague assertions and legal conclusions).

[7] Moreover, the intracorporate conspiracy doctrine provides that a conspiracy "cannot exist solely between members of the same entity." *Beese v. Todd*, 35 Fed. Appx. 241, 243 (7th Cir. 2002) (citing *Payton v. Rush–Presbyterean–St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999)). Because the defendants in this case are all members of the same entity, the Indiana Department of Correction, they cannot be sued under § 1985 for conspiracy. *See id.*

7

"motivated in their actions by racial or some other type of invidious, class-based discrimination." *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985). Ruby has made no such allegations here; rather, he claims that the defendants' actions were taken in response to his complaints about the PLUS program. *See id.* (allegation that plaintiff was black, standing alone, was "insufficient to ground either a section 1981 or a section 1985 claim" when the complaint described retaliation for the filing of a habeas corpus petition rather than discrimination).

Finally, Ruby alleges that he should be allowed to proceed on a theory of intentional infliction of emotional distress for the defendants' "willful, wanton, and wreckless (sic) behavior of retaliation." ECF 16 at 5. Under the Indiana Tort Claims Act, a tort claim against a political subdivision is barred unless notice is filed with the governing body of the political subdivision and its risk management commission within 180 days of the loss. *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992); Ind. Code § 34-13-3-8. The notice requirement applies not only to political subdivisions but also to employees of political subdivisions as well. *Id.* Here, the complaint includes no allegations to suggest that Ruby complied with the notice requirements of the Indiana Tort Claims Act. Therefore, the state law claim of intentional infliction of emotional distress will be dismissed.

For these reasons, the court:

(1) DENIES the motion to amend as moot and DIRECTS the clerk to docket it as the amended complaint (ECF 16);

(2) GRANTS Brian K. Ruby leave to proceed against Warden Mark Sevier, Unit

Team Manager Hood, and PLUS Director Ms. Thomas in their individual capacities for monetary damages for removing him from the PLUS program on July 7, 2018, in retaliation for formally complaining in June of 2018 about his concerns regarding the safety and security of the inmates he was charged with observing, in violation of the First Amendment;

(3) DISMISSES Commissioner Rob Carter, Deputy Warden Pazera, Classification Supv. Mr. Krueger, Grievance Specialist Harvil, and Sgt. Ms. Johnson;

(4) DISMISSES all other claims;

(5) DIRECTS the clerk to request Waiver of Service from (and, if necessary, the United States Marshals Service to serve process on) Warden Mark Sevier, Unit Team Manager Hood, and PLUS Director Ms. Thomas with a copy of this order and the amended complaint (ECF 16), pursuant to 28 U.S.C. § 1915(d); and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Warden Mark Sevier, Unit Team Manager Hood, and PLUS Director Ms. Thomas to respond to the complaint, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Brian K. Ruby, has been granted leave to proceed in this screening order.

SO ORDERED on February 18, 2020

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT