UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRIAN K. RUBY, <br><br> Plaintiff, <br><br> v. <br><br> WARDEN MARK SEVIER, *et al.*, <br><br> Defendants. | CAUSE NO.: 3:18-CV-890-JD-MGG |

OPINION AND ORDER

Brian K. Ruby, a prisoner without a lawyer, filed a complaint against twelve defendants alleging he was wrongfully terminated from the PLUS[1] program at the Westville Correctional Facility. ECF 2. The court screened the complaint and determined that it didn't state a claim because Ruby does not have a constitutional right to continued participation in the PLUS program and cannot challenge the process he was given. ECF 8 at 3. However, pursuant to *Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013), Ruby was granted an opportunity to file an amended complaint. *Id*. His amended complaint attempted to sue eight defendants and purported to bring his claims pursuant to 42 U.S.C. §§ 1981, 1983, & 1985. ECF 22. The court screened the amended complaint, allowing him to proceed against Warden Mark Sevier, Unit Team

---

[1] "PLUS is a faith and character-based re-entry initiative. Purposeful Living Units Serve offers participants alternatives for rehabilitation. Whether participants choose to learn from character-based materials or faith-based materials, the living units are geared towards teaching core fundamental values that challenge and focus on positive reinforcement through learned behavior. The emphasis of this voluntary initiative focuses on strengthening spiritual, moral, and character development as well as life-skills. This is the basis towards re-entry into the community." *See* https://www.in.gov/idoc/2356.htm (last visited Feb. 10, 2020).

Manager Hood, and PLUS Director Mr. Thomas in their individual capacities for monetary damages for removing him from the PLUS program on July 7, 2018, in retaliation for complaining in June of 2018 about his concerns regarding the safety and security of the inmates he was charged with observing, in violation of the First Amendment. *See* ECF 21 & ECF 22. All other claims and defendants were dismissed. *Id*. Ruby has now filed a motion for leave to amend along with a proposed second amended complaint, seeking to add defendants and claims and to correct the spelling or identification of several defendants.[2] ECF 31 & ECF 31-1. He purports to bring these claims pursuant to 42 U.S.C. § 1983 for violations of his First Amendment rights, federal statutory rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), and various state laws. *Id*. The current defendants have filed a response in opposition to the motion, arguing that Ruby has offered no new evidence or factual basis which would allow for the new/renewed claims, that he has not alleged any specific action related to the defendants he attempts to add, and that he engaged in undue delay in bringing these new claims.[3]

"Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Machine*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). However, "that does not mean it must

---

[2] Ruby previously filed two additional motions to amend with different proposed complaints (ECF 29 & ECF 30), but those motions will be denied as moot due to the later filed motion.

[3] The defendants filed a motion to amend their response due to an issue with the certificate of service. ECF 34. That motion will be granted, and the previous response (ECF 33) will be stricken. The court will proceed with the amended response. ECF 35.

always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). "[C]ourts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Id*. Here, because Ruby has alleged a new plausible claim for injunctive relief, the court will grant the motion and proceed to screen the proposed second amended complaint, despite the fact that many of the new claims are futile and Ruby has failed to cure prior deficiencies.

A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

*Facts Alleged in the Second Amended Complaint*

While incarcerated at the Westville Correctional Facility, Ruby was accepted into and participated in the PLUS program; completing it would have made him eligible to earn a six-month time credit. For his part, Ruby was tasked with observing offenders on suicide watch. He was to ensure that those offenders did not attempt to commit suicide. In June of 2018, Ruby made a verbal, informal complaint to the PLUS Supervisor, Ms. Thomas, about "safety and security issues for the 'suicidal' inmates," advising her of the

"normal procedures followed at other IDOC facilities." ECF 31-1 at 3. Specifically, he expressed his concerns regarding the light switches being inside the suicide watch cells, which often left the cells dark. He further attempted to address those concerns with Warden Mark Sevier and Deputy Warden Pazera, but no response was received and no changes were made. In fact, Ms. Thomas and Unit Team Manager Hood told Ruby to "tone it down and quit rocking the boat, or else they would find someone else to fill his spot." *Id*.

On July 7, 2018, an offender attempted to commit suicide on Ruby's watch. Prison officials subsequently removed Ruby from the PLUS program. According to Ruby, this was not done as part of any legitimate disciplinary action but rather in retaliation for his previous complaints which would have exposed the prison's "negligence and deliberate indifference to [suicidal] prisoners' needs." *Id*. at 4. Ruby alleges that other inmates were deterred from complaining about the dark suicide cells because of Ruby's removal from the program. He states—without elaboration—that the defendants have a policy, practice, or custom of First Amendment retaliation.

Ruby alleges that he has:

> sincerely held religious beliefs as a Christian as GOD commands Plaintiff, 'that true disciples will face opposition for standing out from the crowd' (John 15:18) and 'do not quench the Spirit. Do not despise the prophesies. Test all things; hold fast what is good' (1 Thessalonians 5:19–21) 'Strength to resist evil is best gained by aggressive service' (The Acts of the Apostles P. 105) 'Whatever you do, do all to the glory of GOD' (1 Corinthians 10:31) 'The world needs today what it needed nineteen hundred years ago–a revelation of Christ' (The Ministry of Healing, p. 143)

4

*Id*. He alleges that the punishment of removal from the PLUS program caused him to "stop[] practicing his sincerely held religious beliefs to stand against oppression and speak up for the weak." *Id*. at 5. Ruby seeks monetary damages and injunctive relief requiring the defendants to return him to the PLUS program or, alternatively, provide him with "the time cut associated with graduating the PLUS program/job" and an injunction requiring the defendants to adopt and enforce a policy that will "curb or deter its employees from First Amendment retaliation in the future." *Id*. at 8–9.

*Analysis of Ruby's Claims*

Ruby alleges he was retaliated against in violation of the First Amendment. "To prevail on his First Amendment retaliation claim, [the plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal quotation marks and citations omitted). "Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners." *Caffey v. Maue*, 679 Fed. Appx. 487, 490 (7th Cir. 2017) (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987); *Watkins v. Kasper*, 599 F.3d 791, 796–97 (7th Cir. 2010)). Not all actions alleged to be retaliatory must be "actionable in and of themselves . . .." *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). Rather, "if the acts

5

were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983." *Id*.

Here, Ruby alleges that Warden Sevier "along with the other defendants" (ECF 31-1 at 4) decided to remove him from the PLUS program in retaliation for raising concerns about the program's procedures and the safety and security of the inmates he was charged with observing. Further, he claims that Ms. Thomas and Mr. Hood threatened that they would find someone else to fill his spot if he continued complaining. Read together and giving Ruby the benefit of the inferences to which he is entitled at this stage, he has plausibly alleged the same retaliation claims for monetary damages against Warden Sevier, Ms. Thomas, and Mr. Hood in their individual capacities that he did in his previous amended complaint.

Additionally, for the first time, Ruby requests injunctive relief. He seeks to remedy the retaliatory actions of the defendants by requiring them to reinstate him to the PLUS program or another alternative option. Giving Ruby the benefit of the inferences to which he is entitled at this stage, he has stated a plausible claim for injunctive relief. It is the warden who is "a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Thus, Ruby may proceed against Warden Sevier in his official capacity to receive a permanent injunction to remedy his allegedly retaliatory removal from the PLUS program. That said, the specific requests Ruby describes—including a time cut associated with the wholly speculative possibility of his graduation from the PLUS program—may not be ordered even if it is ultimately

6

determined that injunctive relief is warranted. Simply put, Ruby cannot dictate how such injunctive relief is implemented. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)). Therefore, injunctive relief—if granted—would be limited to requiring correctional officials to remedy the retaliatory removal to the extent required by the Constitution.

The remainder of Ruby's new claims do not fare as well. He alleges that his religious rights under the First Amendment and RLUIPA were violated. Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). The Religious Land Use and Institutionalized Persons Act (RLUIPA) affords even broader protections than the First Amendment. This act prohibits governmental entities from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see generally Holt v. Hobbs*, 574 U.S. 352 (2015). Although money damages and injunctive

7

relief are available under the First Amendment, only injunctive relief is available under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Here, Ruby alleges that his removal from the PLUS program caused him to stop speaking up against oppression of the weak, which violates his sincerely held Christian religious beliefs. To the extent Ruby is claiming his speech was quelled via the defendants' actions, this claim is duplicative. He has already been granted leave to proceed on a First Amendment retaliation claim, in which he alleges he complained about the lack of light in the suicidal prisoners' cells and was retaliated against for it. Whether he did so because he was motivated by his religion or because he engaged in protected speech, the result was the same—namely, retaliatory removal from the PLUS program. Proceeding on different constitutional theories based on the same facts is redundant. *See Williams v. Snyder*, 150 F. App'x 549, 552 (7th Cir. 2005) ("The remainder of [plaintiff's] substantive legal theories . . . warrant little discussion [b]ecause they all involve the same set of facts . . . they would be redundant even if we found that he stated a claim."); *Conyers v. Abitz*, 416 F.3d 580, (7th Cir. 2005) (dismissing claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels").

Moreover, the complaint does not plausibly allege that the defendants knew he was engaging in any sort of religious activity when he made the complaints. There is no indication that the removal was in any way linked to Ruby's religion. And, other than Ruby's own conclusory statements, the complaint does not plausibly allege that there is any sort of prison rule or regulation in place that precludes the exercise of one's faith by

8

preventing prisoners from speaking up against oppression of the weak. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) ("A claim [only] has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Instead, as Ruby alleges it, he was removed from the PLUS program specifically because prison officials were worried that his previous complaints would "expose defendants' negligence and deliberate indifference to prisoners' needs." ECF 31-1 at 4. The facts presented describe retaliatory decisions of individual employees based on protected speech—whether motivated by religion or not—rather than a broad regulation prohibiting speaking out and/or complaining in general. Of note, the prison has a specific grievance system set up for such purposes,[4] so it is not reasonable to infer that there is a blanket rule against doing so that would interfere with practicing his self-described Christian beliefs or Christianity in general at the Westville Correctional Facility. For these reasons, the second amended complaint does not plausibly allege any First Amendment Free Exercise or RLUIPA claims. Therefore, they will be dismissed.[5]

In a similar vein, Ruby names the Indiana Department of Correction (IDOC) as a defendant, seeking to add official policy claims sounding in *Monell v. Dep't of Soc. Servs.*

---

[4] In fact, Ruby states that he made a verbal complaint "in accordance with both IDOC and PLUS program policies." ECF 31-1 at 3.

[5] Ruby also states that his statutory rights under Indiana's Religious Freedom Restoration Act (RFRA) were violated. However, for the same reasons described in the preceding paragraphs, Ruby has not plausibly alleged that his exercise of religion was substantially burdened by any sort of rule promulgated or implemented by the Indiana Department of Correction or the prison officials at the Westville Correctional Facility. *See* Ind. Code § 34-13-9-8.

*of City of New York*, 436 U.S. 658 (1978) against it. While he asserts generally that IDOC has a "policy, practice, or custom of First Amendment Retaliation and Substantially Burdening the sincerely held religious beliefs of inmates at WCC" (ECF 31-1 at 1), he has provided no facts to support theses broad and unspecific assertions. Other than his own conclusory statements, he neither identifies a relevant policy nor describes multiple instances[6] that would suggest there is a practice or custom in place related to these claims. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d at 602.

Moreover, Ruby cannot maintain such a suit against IDOC because it is not considered a "person" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 n.15 (7th Cir. 2019); *Phillips v. Baxter*, 768 F. Appx. 555, 560 (7th Cir. 2019) (citing *Will*, 491 U.S. at 70) (noting that "*Monell* applies only to local government units that are not considered part of the state" and concluding that the district court was correct when it denied a futile motion to amend where prisoner sought to bring an official policy claim against a department of the state). Additionally, the Eleventh Amendment precludes claims for monetary damages against a state and its agencies. *de Lima Silva,* 917 F.3d at

---

[6] Ruby references Eriec Campbell, a graduate of the PLUS program, who attests that he was "discouraged from speaking out while [he] was still a participant in the PLUS program" because he saw what happened to Ruby after he complained. ECF 31-1 at 4. Campbell does not allege that his religious beliefs were impinged upon, nor does he claim he was retaliated against. While Campbell's statement may support Ruby's First Amendment retaliation claim in the sense that it provides evidence of the chilling effect of the retaliatory actions taken against Ruby, it does not serve to establish that a policy or custom of First Amendment retaliation or religious burdening existed, especially considering Campbell graduated from the PLUS program does not allege he was harmed or prevented from doing so.

564–65; *see also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). Thus, the second amended complaint does not state a claim against IDOC, and these claims will be dismissed.[7]

Ruby names Deputy Warden of Operations Kenneth Gann as a defendant. However, other than listing his name and job title alongside various legal theories, the actions of Mr. Gann are not described anywhere in the body of the complaint. No allegations suggest that he participated in any decision to retaliate against Ruby or, for that matter, implemented any sort of rule that resulted in a constitutional deprivation. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Therefore, the second amended complaint does not state a claim against Mr. Gann, so he will be dismissed.

Finally, Ruby alleges that he should be allowed to proceed on several state law tort claims including negligence, intentional infliction of emotional distress, and

---

[7] Additionally, Ruby alleges that the IDOC, Warden Sevier, and Deputy Warden Gann have a "practice, policy, or custom of failing to train their employees about their legal duties to avoid violating the religious rights of inmates at WCC (and throughout the IDOC)" as well as a custom of negligent training. ECF 31-1 at 7–8. "An allegation of a 'failure to train' is available only in limited circumstances," and this is not such a case. *See Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). A failure to train claim requires that "the policymakers had acquiesced in a pattern of constitutional violations." *Id*. However, Ruby's second amended complaint does not plausibly allege a pattern of constitutional violations. Rather, it merely parrots legal conclusions and makes conclusory allegations that the training of officers was inadequate. Thus, Ruby cannot proceed on these claims either.

11

negligent infliction of emotional distress. As noted in the court's previous screening order—as related to Ruby's prior intentional infliction of emotional distress claim—under the Indiana Tort Claims Act, a tort claim against a political subdivision is barred unless notice is filed with the governing body of the political subdivision and its risk management commission within 180 days of the loss. *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992); Ind. Code § 34-13-3-8. The notice requirement applies not only to political subdivisions but also to employees of political subdivisions as well. *Id.* Here, the second amended complaint includes no allegations to plausibly suggest that Ruby has complied with the notice requirements of the Indiana Tort Claims Act. Therefore, he failed to cure the deficiency pointed out by the court.

Moreover, "[u]nder the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014). Here, there is no suggestion that any of the employees were acting outside the scope of their employment when they punished Ruby by removing him from the PLUS program. These claims cannot proceed, and they will be dismissed.

Normally, the court would order the defendants, pursuant to 42 U.S.C. § 1997e(g)(2), to respond to the second amended complaint, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Brian K. Ruby, has been granted leave to proceed in this screening order. However, because the First Amendment Retaliation claim in the second amended complaint is identical to

the claim he was previously granted leave to proceed on—and, the only new claim is injunctive relief directly related to that claim—a response is not necessary.

For these reasons, the court:

(1) DENIES AS MOOT the motions to amend (ECF 29 & ECF 30);

(2) GRANTS the motion for leave to file a "corrected" second amended complaint (ECF 31);

(3) DIRECTS the clerk to separately docket the second amended complaint (ECF 31-1);

(4) GRANTS the defendants' motion to amend their response (ECF 34) and STRIKES the previous response (ECF 33);

(5) DENIES the motion for clarification of the complaint as unnecessary (ECF 36) and construes it as a reply to the defendants' response;

(6) GRANTS Brian K. Ruby leave to proceed against Warden Mark Sevier, Unit Team Manager Hood, and PLUS Director Ms. Thomas in their individual capacities for monetary damages for removing him from the PLUS program on July 7, 2018, in retaliation for complaining in June of 2018 about his concerns regarding the safety and security of the inmates he was charged with observing, in violation of the First Amendment;

(7) GRANTS Brian K. Ruby leave to proceed against Warden Sevier in his official capacity for injunctive relief to remedy the allegedly retaliatory actions of the defendants by requiring Warden Sevier to reinstate him to the PLUS program or another alternative option;

13

(8) DISMISSES the IDOC and Deputy Warden of Operations Kenneth Gann; and

(9) DISMISSES all other claims.

SO ORDERED on February 25, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT